Case: 2:26-cv-13881
Assigned To : Parker, Linda V.
Referral Judge: Altman, Kimberly G.
Assign. Date : 10/13/2026
Description: CMP NICHOLAS SEDLOCK V META PLATFORMS, INC (SS)

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **NICHOLAS DAVID PAUL SEDLOCK,**<br><br>Plaintiff,<br><br>v.<br><br>**META PLATFORMS, INC.,**<br><br>Defendant. | Civil Action No. [TBD]<br><br>**COMPLAINT FOR PERSONAL INJURY — PRODUCTS LIABILITY, NEGLIGENCE, AND FAILURE TO WARN**<br><br>**TRIAL BY JURY DEMANDED** |

Plaintiff Nicholas David Paul Sedlock ("Plaintiff") in sui juris brings this Complaint against Defendant Meta Platforms, Inc. ("Meta" or "Defendant"), and alleges as follows upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters:

## I. PARTIES

1. Plaintiff Nicholas Sedlock is an natural person inhabiting the united States of America Plaintiff began using the Instagram platform operated by Defendant between the ages of 13 and 15, at which time Plaintiff was a minor under applicable law.

2. Defendant Meta Platforms, Inc. (formerly Facebook, Inc.) is a Delaware corporation with its principal place of business at 1 Hacker Way, Menlo Park, California 94025. Meta is the owner, operator, designer, and distributor of the Instagram social media platform and all underlying recommendation algorithms, engagement systems, and user-facing features at issue in this action.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship). Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District and Defendant is subject to personal jurisdiction herein.

***Note for Moot:*** *This matter presents claims appropriate for transfer and consolidation into In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation, MDL No. 3047 (N.D. Cal., Hon. Yvonne Gonzalez Rogers).*

## III. FACTUAL ALLEGATIONS

### A. Plaintiff's Minor-Age Initiation onto Instagram

5. Plaintiff first created and began actively using an Instagram account between the ages of 13 and 15, plaintiff is unsure of the exact age he started using Instagram. Discovery will show the correct date. At that time, Plaintiff was a minor and lacked the

fully developed prefrontal cortical capacity to recognize, evaluate, or resist the compulsive-use mechanisms engineered into Meta's platform.

6. Plaintiff has used Instagram continuously from the date of first account creation to the present, a period spanning approximately ten or more years. Plaintiff's documented weekly screen time on Instagram currently totals 36 hours and 4 minutes, with a daily average of approximately five (5) hours — usage patterns consistent with behavioral addiction as defined in the clinical and scientific literature.

7. At the time Plaintiff created his account, he was below the minimum age stated in Meta's own Terms of Service. Meta nonetheless permitted, facilitated, and commercially exploited Plaintiff's account and engagement data from the outset.

**B. Meta's Deliberate Addictive Design**

8. Meta designed and deployed Instagram with features specifically and deliberately engineered to maximize user engagement, time-on-platform, and return frequency, including but not limited to:

(a) Variable-ratio reward algorithms — delivering likes, comments, and content in unpredictable intermittent sequences that exploit the same dopaminergic reinforcement pathway as slot machine mechanics;

(b) Infinite scroll — eliminating natural stopping points and interrupting the cognitive cues that would otherwise signal the appropriate conclusion of a session;

(c) Algorithmic content personalization — deploying machine-learning systems that identified and continuously served each user's highest-engagement content categories, including content correlated with anxiety and social comparison in adolescents;

(d) Social validation loops — structuring "likes," follower counts, and comment features to trigger social approval-seeking behavior particularly acute in developing adolescent neurological profiles;

(e) Targeted push notifications — engineered to maximize session re-initiation at psychologically optimal intervals, including during nighttime hours for minor users.

9. Meta's own internal research — including documents later disclosed through the 2021 Frances Haugen whistleblower disclosure and through discovery in MDL No. 3047 — confirmed that Meta was aware that these design features caused serious harm to younger users, including depression, anxiety, body image disruption, and compulsive overuse. Despite this knowledge, Meta continued to expand and optimize these features without warning users or their parents.

10. Unsealed trial exhibits in the bellwether proceedings in MDL No. 3047 and JCCP No. 5255 (Judicial Council Coordination Proceeding, Los Angeles Superior Court) reveal that Meta's executives and legal personnel received and reviewed this internal research and took affirmative steps to limit its disclosure and to manage its presentation to regulators and the public.

**C. Plaintiff's Harm — Behavioral Addiction and Consequential Substance Dependency**

11. As a direct and proximate result of Meta's engineered platform design, Plaintiff developed a compulsive dependency on Instagram beginning during his minor years. This dependency is evidenced by, inter alia: (a) daily usage of approximately five hours; (b) weekly usage totaling 36 hours and 4 minutes; (c) inability to reduce use despite awareness of its negative effects; and (d) continued compulsive use across more than a decade.

12. Plaintiff further alleges that the behavioral addiction to Instagram that was cultivated by Meta's platform during Plaintiff's developmental years was a substantial contributing factor in Plaintiff's subsequent use of and dependency on controlled substances. The compulsive reward-seeking and impulse-dysregulation patterns reinforced by Meta's algorithmic design during Plaintiff's adolescence lowered Plaintiff's neurological threshold for addictive behaviors, including substance use.

13. As a result of the foregoing, Plaintiff has suffered and continues to suffer significant harm to his mental health, physical health, productivity, interpersonal relationships, financial wellbeing, and overall quality of life.

## IV. CAUSES OF ACTION

### COUNT I NEGLIGENT PRODUCT DESIGN

14. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

15. Meta owed a duty of reasonable care to users of Instagram, and particularly to minor users, to design its platform in a manner that did not create foreseeable and unreasonable risks of behavioral addiction, psychological harm, and compulsive use disorder.

16. Meta breached that duty by intentionally and knowingly incorporating addictive design features into Instagram — including those described in Section III — that it knew posed an unreasonable risk of harm to minor users, while concealing those risks from users, parents, and the public.

17. As a direct and proximate result of Meta's negligent design, Plaintiff suffered the damages described herein.

**COUNT II FAILURE TO WARN**

18. Plaintiff re-alleges all preceding paragraphs.

19. Meta knew or had reason to know, prior to and during the period of Plaintiff's use, that Instagram posed a significant risk of behavioral addiction and psychological harm, particularly to users whose neurological development was incomplete — including Plaintiff, who began using the platform as a minor.

20. Meta failed to provide adequate warnings to Plaintiff, or to Plaintiff's parents or guardians, of these known and documented risks.

21. Had adequate warnings been provided, Plaintiff or Plaintiff's guardians would have taken steps to prevent, limit, or avoid Plaintiff's use of the platform during Plaintiff's formative developmental years.

22. Meta's failure to warn was a direct and proximate cause of the harms Plaintiff sustained.

## COUNT III NEGLIGENCE — NEGLIGENT MARKETING TO MINORS

23. Plaintiff re-alleges all preceding paragraphs.

24. Meta negligently and recklessly made Instagram available to and actively marketed it toward minor users, including Plaintiff, despite actual knowledge that its addictive design was disproportionately harmful to adolescent users whose neurological development rendered them particularly susceptible to compulsive-use disorders.

25. Meta facilitated Plaintiff's account creation and ongoing use as a minor, in violation of its own stated Terms of Service, in disregard of applicable law including the Children's Online Privacy Protection Act, and in conscious disregard of the foreseeable harm to Plaintiff and similarly situated minor users.

26. Meta's negligent marketing and facilitation of Plaintiff's minor-age use was a direct and proximate cause of Plaintiff's addiction and resulting harm.

## COUNT IV PRODUCTS LIABILITY — DESIGN DEFECT (Strict Liability)

27. Plaintiff re-alleges all preceding paragraphs.

28. Instagram, as designed, manufactured, and distributed by Meta, was defective and unreasonably dangerous at the time it was placed into the stream of commerce and at all times during Plaintiff's use.

29. The defect in Instagram's design consists of its algorithmic engagement systems, which were engineered to exploit the psychological and neurological vulnerabilities of

users — particularly minors — to generate compulsive use for commercial gain, without adequate safeguards or warnings.

30. This design defect was a substantial factor in causing Plaintiff's behavioral addiction and all resulting harms alleged herein.

**COUNT V NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

31. Plaintiff re-alleges all preceding paragraphs.

32. Meta's negligent conduct, as described herein, directly and foreseeably caused Plaintiff to suffer severe emotional distress, including but not limited to: chronic anxiety, compulsive behavioral patterns, impaired impulse control, diminished capacity for emotional regulation, social impairment, and the emotional sequelae of Plaintiff's substance dependency.

33. These harms were a direct, foreseeable, and proximate result of Meta's conduct in designing, deploying, and concealing the addictive properties of its platform.

## V. DAMAGES

34. As a direct and proximate result of Defendant's conduct described herein, Plaintiff has suffered, and continues to suffer, the following categories of damages:

(a) Behavioral addiction damages, including the development and perpetuation of compulsive use disorder resulting from Meta's deliberate platform design, as documented by Plaintiff's screen time records reflecting 36+ hours weekly and a 5-hour daily average;

(b) Consequential substance dependency damages: Plaintiff alleges that the Instagram-induced compulsive behavioral patterns and psychological dependency cultivated during Plaintiff's minor years substantially contributed to Plaintiff's subsequent use of and dependency on controlled substances, with all attendant physical, psychological, and financial harms;

(c) Mental and emotional distress damages, including anxiety, depression, impaired impulse control, and sustained emotional harm stemming from algorithmically engineered engagement beginning during Plaintiff's developmental minority;

(d) Lost time and productivity damages, representing thousands of hours of productive capacity lost to compulsive platform use;

(e) Future medical and treatment costs, including the anticipated costs of behavioral health treatment, counseling, and substance dependency treatment reasonably necessitated by Defendant's conduct;

(f) General damages for pain, suffering, and diminished quality of life in an amount to be **proven at trial**; and

(g) Punitive damages: Defendant's conduct was **willful, knowing, and in conscious disregard of Plaintiff's rights and wellbeing,** justifying the imposition of punitive damages sufficient to punish and deter such conduct.

## VI. PLAINTIFF'S FIRST SET OF WRITTEN DISCOVERY

*(Pursuant to Fed. R. Civ. P. 33, 34, and 36; modeled on MDL No. 3047, N.D. Cal., and JCCP No. 5255, L.A. Superior Ct.)*

**DEFINITIONS**

**"Meta"** means Meta Platforms, Inc., its predecessors (including Facebook, Inc.), subsidiaries, affiliates, officers, directors, employees, agents, and all persons acting on its behalf.

**"Instagram"** means the Instagram application, platform, website, and all related services, features, algorithms, and systems operated or controlled by Meta.

**"Relevant Period"** means January 1, 2010 through the present.

**"Plaintiff's Account"** means any and all Instagram and/or Facebook accounts associated with Plaintiff's name, email address(es), phone number(s), device identifiers, or IP addresses at any time.

---

**REQUESTS FOR PRODUCTION OF DOCUMENTS** (Fed. R. Civ. P. 34)

**Category 1: Plaintiff's Personal Account Data and Records**

**RFP No. 1.** All data, Accounting Data, metadata, logs, and records associated with Plaintiff's Account, including without limitation: account creation date and method; age or date of birth provided or inferred at creation; all profile information; all posts, stories, reels, messages, and content created or shared; all content viewed, liked, saved, or interacted with; all algorithmic feed and recommendation data served to Plaintiff's Account; all engagement metrics tracked for Plaintiff's Account; all notification records;

all session logs, login records, and time-on-platform data; and all data available through Meta's "Download Your Information" feature, in full machine-readable format.

**RFP No. 2.** All documents reflecting any internal classification, scoring, labeling, or tagging of Plaintiff's Account, including: age classification or verification records; behavioral classification; addiction or compulsive-use risk scores; engagement tier or value tier designations; and any flags, alerts, or internal notes associated with Plaintiff's Account.

**RFP No. 3.** All documents reflecting Meta's knowledge of or response to Plaintiff's Account use patterns, including any automated or human review triggered by Plaintiff's Account activity, session length, or engagement metrics.

**RFP No. 4. All records of data shared, sold, licensed, or otherwise transferred concerning Plaintiff's Account to any third party, including advertisers, data brokers, and research partners.**

**Category 2: Algorithmic Design and Engagement Systems Targeting Minor Users**

**RFP No. 5.** All documents, including internal research reports, memoranda, presentations, and communications, relating to Meta's design, development, testing, or modification of Instagram's content recommendation algorithm(s), including all documents discussing the effect of algorithmic design on user engagement, session length, or compulsive use, particularly as it relates to users under 18. *(See MDL 3047 — categories compelled via unsealed exhibits, including internal research on teen engagement and compulsive use patterns.)*

**RFP No. 6.** All documents relating to Instagram's use of variable reward mechanics, including: the timing and sequencing of likes, comments, and notifications; infinite scroll design decisions; and any A/B testing involving these features and their effects on minor users.

**RFP No. 7.** All documents relating to Instagram's push notification systems, including documents analyzing the effect of notification frequency, timing, and content on user return rates and session initiation, particularly for users under 18.

**RFP No. 8.** All documents relating to the "Explore" page, Reels feed, or any other algorithmically curated content surface on Instagram, including internal studies, experiments, and communications discussing the addictive potential of these features for minor users.

**RFP No. 9.** All documents discussing "engagement," "time on platform," "daily active users," "retention," or "re-engagement" as they relate to users under 18, including internal communications in which employees raised concerns about engagement-maximizing design and minor user wellbeing.

**Category 3: Internal Research on Minor Users, Addiction, and Mental Health**

**RFP No. 10.** All internal research, studies, reports, surveys, presentations, and analyses conducted by or for Meta relating to the mental health effects of Instagram use on users under 18, including depression, anxiety, body image, sleep disruption, compulsive use, and addiction. *(Precedent: Frances Haugen disclosures, 2021; unsealed MDL 3047 exhibits, KGM v. Meta & YouTube, JCCP 5255, Jan.–Mar. 2026.)*

**RFP No. 11.** All documents relating to Meta's internal research finding that Instagram worsened body image issues, or that platform use was correlated with depression, anxiety, or self-harm in minor users, and all documents reflecting executive or board-level awareness of such research.

**RFP No. 12. All documents in which Meta employees, researchers, executives, or board members discussed the addictive nature of Instagram, the risk of behavioral addiction in minor users, or comparisons between Instagram's engagement mechanics and gambling or substance addiction mechanics.**

**RFP No. 13.** All documents relating to any internal Meta project, task force, committee, or working group formed to study, address, or respond to concerns about minor user safety, addiction, or mental health on Instagram, including the "Teen Safety" team, "Compassionate Use" initiatives, or any similarly titled internal effort.

**RFP No. 14.** All documents in which Meta's legal team provided direction to researchers, data scientists, or product teams regarding the framing, presentation, storage, or alteration of research data concerning teen users' developmental vulnerability or mental health outcomes. *(Precedent: Lieff Cabraser brief, JCCP 5255, Nov. 2025 — alleging instruction to alter data; produced in discovery and disputed by Meta.)*

**Category 4: COPPA Compliance and Underage User Policies**

**RFP No. 15.** All documents relating to Meta's efforts to detect, identify, verify, or exclude users under the age of 13 from Instagram, including all documents relating to

age verification systems, parental consent mechanisms, and the detection of underage accounts.

**RFP No. 16.** All documents reflecting Meta's internal estimates, models, or analyses of the number or percentage of Instagram users who were under 13, or under 18, at any time during the Relevant Period, including any data produced in the State AGs' COPPA enforcement actions within MDL 3047.

**RFP No. 17.** All documents relating to Meta's policies and practices for handling accounts determined or suspected to belong to users under 13, including data reflecting the number of accounts suspended, deleted, or flagged for age violations, and the data retention or deletion practices applied to such accounts.

**RFP No. 18.** All data reflecting linked or associated accounts — including accounts linked by device identifier, IP address, phone number, or email — where one account was identified as belonging to a user under 13.

**Category 5: Marketing and Acquisition of Minor Users**

**RFP No. 19.** All documents relating to Meta's strategies for acquiring, retaining, or increasing engagement of users under 18, including internal documents referencing youth acquisition strategy, teen engagement, or documents describing Instagram or Facebook as a "first social media app" for young users.

**RFP No. 20.** All documents relating to Meta's advertising targeting practices with respect to users under 18, including documents reflecting Meta's use of behavioral data to serve targeted advertising to minor users.

**RFP No. 21.** All documents relating to Meta's communications, outreach, or coordination with schools, parent organizations, or community groups, including any documents in which Meta's strategy for managing parental or public concern about youth platform use was discussed.

**Category 6: Warnings, Disclosures, and Concealment**

**RFP No. 22.** All documents relating to warnings, disclosures, or notifications provided (or considered and not provided) to users or parents regarding the risks of compulsive use, behavioral addiction, or mental health harm associated with Instagram use, particularly for minor users.

**RFP No. 23.** All documents in which Meta considered, proposed, or rejected adding features designed to limit compulsive use or screen time, including time limits, usage dashboards, notification controls, or feed chronology settings, and documents discussing the business reasons for rejecting or limiting such features.

**RFP No. 24.** All external communications — including press releases, testimony, advertising, and statements to regulators — in which Meta made representations about Instagram's safety for minor users, and all internal documents discussing the accuracy of such representations.

**Category 7: Executive and Internal Communications**

**RFP No. 25.** All communications — including emails, Slack messages, internal memos, and meeting minutes — among Meta executives, engineers, researchers, product managers, and legal counsel, discussing any of the following topics as they relate to minor users: addiction, compulsive use, mental health, teen safety, COPPA compliance, age verification, engagement metrics, or algorithmic design.

**RFP No. 26.** All communications between Meta and any government agency, legislative body, or regulatory authority — including the FTC, Congress, and state attorneys general — regarding minor user safety, addiction, or Instagram's mental health effects.

---

**INTERROGATORIES** (Fed. R. Civ. P. 33)

**Interrogatory No. 1.** Identify all internal research studies, reports, or analyses conducted by or for Meta during the Relevant Period that examined the relationship between Instagram use and addiction, compulsive use, or mental health outcomes in users under 18, including the title, date, author(s), and general conclusions of each.

**Interrogatory No. 2.** Identify all persons at Meta with knowledge of internal research findings regarding the mental health effects of Instagram use on minor users, including their title, role, and the nature of their knowledge.

**Interrogatory No. 3.** Describe in detail all age verification or age detection systems used by Meta on Instagram during the Relevant Period, including when each system was implemented, how it functioned, and its known accuracy rate.

**Interrogatory No. 4.** Identify all product features on Instagram that were designed, modified, or discontinued during the Relevant Period in response to concerns about addictive use or mental health harm in minor users, and the date and business reason for each change.

**Interrogatory No. 5.** Describe all data Meta collected and retains regarding Plaintiff's Account, including the type of data, how it was collected, where it is stored, if it is sold, for how much it is sold via a certified accounting and the retention period applicable to each category.

**Interrogatory No. 6**. Identify all third parties to whom Meta disclosed, sold, licensed, or transferred data relating to Plaintiff's Account, and describe the nature and scope of each disclosure.

**Interrogatory No. 7.** Identify all internal Meta task forces, committees, or working groups formed at any time during the Relevant Period to address concerns about minor user addiction, mental health, or safety on Instagram.

---

**REQUESTS FOR ADMISSION** (Fed. R. Civ. P. 36)

**RFA No. 1.** Admit that Meta's internal research conducted prior to Plaintiff's account creation date found that Instagram use was associated with negative mental health outcomes in users under 18.

**RFA No. 2.** Admit that Meta's Instagram platform used variable reward mechanics — including the delayed and intermittent delivery of likes, comments, and notifications — that were known to Meta to increase compulsive use behaviors in users.

**RFA No. 3.** Admit that Meta did not provide adequate disclosures to minor users or their parents regarding the risk of behavioral addiction associated with Instagram use.

**RFA No. 4.** Admit that Meta collected behavioral and engagement data from Plaintiff's Account beginning from the date of account creation.

**RFA No. 5.** Admit that Meta's algorithmic content recommendation system was designed in part to maximize user time-on-platform, including for users under 18.

**RFA No. 6.** Admit that Meta was aware, prior to 2016, that Instagram use could cause or exacerbate depression and anxiety in teenage users.

**RFA No. 7.** Admit that Meta designed or permitted features on Instagram — including infinite scroll and autoplay — that were intended to reduce natural stopping points for users, including minor users.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nicholas David Paul Sedlock respectfully prays that this Court enter judgment in his favor and against Defendant Meta Platforms, Inc., and award the following relief:

1. Compensatory damages in an amount to be proven at trial;
2. Damages for past, present, and future mental and emotional distress;
3. Damages for past, present, and future costs of treatment for behavioral addiction and substance dependency;
4. Punitive damages in an amount sufficient to punish and deter Defendant's knowing and willful conduct;
5. Pre-judgment and post-judgment interest as permitted by applicable law;
6. Attorneys' fees and costs of suit; and
7. Such other and further relief as the Court deems just and proper.

## TRIAL BY JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/S/ nicholas david paul sedlock

810-712-1227 / AmericansNotUScitizens@proton.me /30550 Gratiot Ave Unit 504 Roseville Michigan

All Rights Reserved and In God We Trust

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Nicholas David Paul Sedlock

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

**DEFENDANTS**

META PLATFORMS, INC.,

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ❒ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ❒ 2 U.S. Government Defendant
- ❒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ❒ 110 Insurance
- ❒ 120 Marine
- ❒ 130 Miller Act
- ❒ 140 Negotiable Instrument
- ❒ 150 Recovery of Overpayment & Enforcement of Judgment
- ❒ 151 Medicare Act
- ❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ❒ 153 Recovery of Overpayment of Veteran's Benefits
- ❒ 160 Stockholders' Suits
- ❒ 190 Other Contract
- ❒ 195 Contract Product Liability
- ❒ 196 Franchise

**REAL PROPERTY**
- ❒ 210 Land Condemnation
- ❒ 220 Foreclosure
- ❒ 230 Rent Lease & Ejectment
- ❒ 240 Torts to Land
- ❒ 245 Tort Product Liability
- ❒ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ❒ 310 Airplane
- ❒ 315 Airplane Product Liability
- ❒ 320 Assault, Libel & Slander
- ❒ 330 Federal Employers' Liability
- ❒ 340 Marine
- ❒ 345 Marine Product Liability
- ❒ 350 Motor Vehicle
- ❒ 355 Motor Vehicle Product Liability
- ❒ 360 Other Personal Injury
- ❒ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☒ 365 Personal Injury - Product Liability
- ❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ❒ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ❒ 370 Other Fraud
- ❒ 371 Truth in Lending
- ❒ 380 Other Personal Property Damage
- ❒ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ❒ 440 Other Civil Rights
- ❒ 441 Voting
- ❒ 442 Employment
- ❒ 443 Housing/ Accommodations
- ❒ 445 Amer. w/Disabilities - Employment
- ❒ 446 Amer. w/Disabilities - Other
- ❒ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ❒ 463 Alien Detainee
- ❒ 510 Motions to Vacate Sentence
- ❒ 530 General
- ❒ 535 Death Penalty

Other:
- ❒ 540 Mandamus & Other
- ❒ 550 Civil Rights
- ❒ 555 Prison Condition
- ❒ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ❒ 625 Drug Related Seizure of Property 21 USC 881
- ❒ 690 Other

**LABOR**
- ❒ 710 Fair Labor Standards Act
- ❒ 720 Labor/Management Relations
- ❒ 740 Railway Labor Act
- ❒ 751 Family and Medical Leave Act
- ❒ 790 Other Labor Litigation
- ❒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ❒ 462 Naturalization Application
- ❒ 465 Other Immigration Actions

**BANKRUPTCY**
- ❒ 422 Appeal 28 USC 158
- ❒ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ❒ 820 Copyrights
- ❒ 830 Patent
- ❒ 835 Patent - Abbreviated New Drug Application
- ❒ 840 Trademark

**SOCIAL SECURITY**
- ❒ 861 HIA (1395ff)
- ❒ 862 Black Lung (923)
- ❒ 863 DIWC/DIWW (405(g))
- ❒ 864 SSID Title XVI
- ❒ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ❒ 870 Taxes (U.S. Plaintiff or Defendant)
- ❒ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ❒ 375 False Claims Act
- ❒ 376 Qui Tam (31 USC 3729(a))
- ❒ 400 State Reapportionment
- ❒ 410 Antitrust
- ❒ 430 Banks and Banking
- ❒ 450 Commerce
- ❒ 460 Deportation
- ❒ 470 Racketeer Influenced and Corrupt Organizations
- ❒ 480 Consumer Credit
- ❒ 485 Telephone Consumer Protection Act
- ❒ 490 Cable/Sat TV
- ❒ 850 Securities/Commodities/ Exchange
- ❒ 890 Other Statutory Actions
- ❒ 891 Agricultural Acts
- ❒ 893 Environmental Matters
- ❒ 895 Freedom of Information Act
- ❒ 896 Arbitration
- ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ❒ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

❒ 1 Original Proceeding ❒ 2 Removed from State Court ❒ 3 Remanded from Appellate Court ❒ 4 Reinstated or Reopened ❒ 5 Transferred from Another District *(specify)* ❒ 6 Multidistrict Litigation - Transfer ❒ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**:
28 U.S.C 1332

Brief description of cause:
28:1332 Diversity-Product Liability

**VII. REQUESTED IN COMPLAINT:** ❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. **DEMAND $** 6000000.00 CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ❒ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):* JUDGE DOCKET NUMBER

DATE
10/10/2026

SIGNATURE OF ATTORNEY OF RECORD
/s/Nicholas David Paul Sedlock All RIghts Reserved

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

Print Save As... Reset

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.